## THE U.S. COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CLEVELAND-CLIFFS INC.,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Ct. No. 23-00050 |
| **UNITED STATES,** | ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiff Cleveland-Cliffs Inc. ("Plaintiff"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff contests the final negative likely injury determination of the U.S. International Trade Commission (the "Commission") for Brazil in the five-year reviews of the antidumping and countervailing duty orders on carbon and alloy steel cut-to-length plate ("cut-to-length plate") from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey. *Carbon and Alloy Steel Cut-To-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey*, Inv. Nos. 701-TA-560-561 and 731-TA-1317-1328 (Review), USITC Pub. 5399 (January 2023) ("*Views*"). The Commission's negative determination for Brazil was published at 88 Fed. Reg. 7462 (February 3, 2023).

## JURISDICTION

2.  This Court has jurisdiction over this action to review the Commission's negative likely injury determination for Brazil pursuant to 28 U.S.C. § 1581(c), because this action was commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *as amended*.  19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

## STANDING

3.  Plaintiff is a domestic producer of the cut-to-length plate products that were the domestic like product in the underlying reviews.  Plaintiff is, therefore, an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(C).  Plaintiff also participated as a party in the reviews below.  Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.  Plaintiff commenced this action by filing a summons on March 3, 2023, which is within 30 days of the publication in the Federal Register of the Commission's final negative determination for Brazil.  *See* Summons (Ct. Int'l Trade, Ct. No. 23-00050, March 3, 2023), ECF No. 1; *Carbon and Alloy Steel Cut-To-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey*, 88 Fed. Reg. 7462 (February 3, 2023).  This complaint is being filed within 30 days after the filing of the summons.  The summons and complaint are therefore timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2) and Rules 3(a)(2) and 6(a) of this Court.

## THE ADMINISTRATIVE PROCEEDING

5.  This appeal arises out of the Commission's determination regarding Brazil in the five-year reviews of the orders on cut-to-length plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey. *Views* at 1 *et seq*. In the reviews, the Commission analyzed the effects of revoking the orders covering cut-to-length plate from these twelve subject countries. *Views* at 3-4.

### I. The Original Investigations on Cut-To-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey

6.  In April 2016, ArcelorMittal USA LLC,[1] Nucor Corporation, and SSAB Enterprises LLC, domestic producers of cut-to-length plate, filed antidumping and countervailing duty petitions on imports of cut-to-length plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey. *Views* at 3.

7.  In January, March, and May 2017, the Commission determined that the domestic cut-to-length plate industry was materially injured by reason of the subject imports of cut-to-length plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey. *Views* at 3-4. Accordingly, in February, March, and May 2017, the Department of Commerce published antidumping and/or countervailing duty orders on the subject imports from the twelve countries. *Views* at 3-4.

### II. The Five-Year Reviews of the Cut-To-Length Plate Orders

8.  On December 1, 2021, the Commission instituted its five-year reviews of the antidumping and countervailing duty orders on imports of cut-to-length plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and

---

[1] AK Steel Corporation and ArcelorMittal USA were acquired by Cleveland-Cliffs in 2020. Accordingly, Cleveland-Cliffs is the successor-in-interest to these two producers.

Turkey. *Views* at 4. During the reviews, Cleveland-Cliffs and other members of the domestic industry demonstrated that the subject imports of cut-to-length plate from Brazil would likely have a discernible adverse impact on the domestic industry and that they would likely compete with each other and the domestic like product upon revocation. *Views* at 20.

9. Cleveland-Cliffs and other domestic producers also demonstrated that the subject imports from Brazil would compete under the same conditions of competition as other subject imports and the domestic like product. Accordingly, they argued that subject imports from all twelve countries, including Brazil, should be cumulated and that the Commission should find that cumulated subject imports would be likely to cause material injury to the domestic industry upon revocation of the orders. *Views* at 62-63, nn. 370 & 372.

10. In its determinations in the reviews, a divided Commission chose not to cumulate subject imports from Brazil with the other subject imports. *Views* at 60-64, 67-68 & 101-108. Chairman Johanson, Commissioner Karpel, and Commissioner Kearns chose not to cumulate the subject imports from Brazil with the other subject imports. Although these Commissioners found that subject imports from Brazil would likely have a discernible adverse impact on the domestic industry and would be likely to compete with each other and the domestic like product if the orders were revoked, *id*. at 27-29 & 51-60, they exercised their discretion under the statute not to cumulate the subject imports from Brazil with other subject imports on the grounds that the Brazilian imports would compete under different conditions of competition than the other subject imports. *Views* at 61-64.[2]

11. In reaching this decision, these Commissioners relied heavily on the fact that the quota imposed on imports of cut-to-length plate from Brazil under Section 232 of the Trade

---

[2] These Commissioners did cumulate the subject imports from the other seven countries. *Views* at 64-68.

Expansion Act of 1962 (19 U.S.C. §1862) ("Section 232") was 10,049 short tons. *Views* at 60. According to the Commission majority, this fact meant that imports of cut-to-length plate from other subject countries were "in a position to compete for a far greater number of sales at larger volumes than subject imports from Brazil." *Views* at 61-62.

12. As a result, the Commission majority found the Brazilian imports would compete under different conditions of competition than the other subject imports, including the Korean imports, even though subject imports from all of the other subject countries were also subject to Section 232 measures and the Korean imports (like imports from Brazil) were subject to an absolute quota under Section 232. *View*s at 61-63. The Commission majority distinguished the quota on Korea from the quota on Brazil by pointing out that the annual quota limit for Korea (223,252 short tons) was larger than the annual quota limit for Brazil (10,049 short tons). *Views* at 61-62.

13. In its analysis for Brazil, the Commission majority also relied heavily on the fact that "the record in these reviews does not indicate that the section 232 trade measure as it relates to CTL plate from Brazil, an absolute quota, will likely be terminated or significantly relaxed in the reasonably foreseeable future." *Views* at 97. They stated that "the quota has been in place" since being imposed in March 2018 and that "there has been no announcement by the current Administration that it is considering revising or removing the quota on CTL plate from Brazil." *Id*. As a result, they concluded that "the Section 232 trade measure, as it is currently structured and enforced, likely will continue into the reasonably foreseeable future." *Id*.

14. After deciding not to cumulate the subject imports from Brazil with the imports from the other subject countries, the Commission majority determined that the cumulated subject imports from Austria, Belgium, China, France, Germany, Italy, Japan, South Africa, South

Korea, Taiwan, and Turkey would likely cause the continuation or recurrence of material injury to the domestic industry if the orders were revoked. *Views* at 68-93. With respect to the subject imports from Brazil, however, they determined that the Brazilian imports would not likely cause material injury to the domestic industry upon revocation, once again relying heavily on their findings that Brazilian imports were subject to a quota under section 232 and that this quota was smaller than the quota on imports from Korea. *Views* at 94-100.

15. Commissioners Schmidtlein and Stayin dissented from the Commission majority's findings with respect to Brazil. *Views* at 101-108. They found that the difference in quota levels between Brazil, South Korea, and the other subject countries did not constitute a different likely condition of competition for Brazil that warranted not cumulating the imports from Brazil. *Views* at 101-108. They pointed out that the fact that imports from Brazil may be subject to a quota while others may be subject to a higher quota, tariffs, or tariff rate quota under section 232 "does not affect the conditions of competition facing these imports in the U.S. market, nor does it suggest that the imports will not compete with each other and with the domestic product after revocation of the orders." *Views* at 103.

16. In this regard, they explained, the "differences in measures do not affect the types of products that may be sold in the U.S. market, nor do they affect the locations or channels of distribution through which the imports may be sold." *Views* at 103. Accordingly, they concluded, "any differences in these section 232 measures will not result in the imports from different subject countries competing differently in the marketplace." *Id*. Moreover, Commissioners Schmidtlein and Stayin stated, "while one may argue that the difference in quota levels between Brazil and South Korea may ultimately have a different impact on the domestic industry (and that is debatable), a difference in impact is not a different condition of

competition." *Views* at 108. As a result, they cumulated the subject imports from Brazil with the other subject imports and made an affirmative determination for all subject countries. *Views* at 108.

17. To summarize, the Commission unanimously issued an affirmative likely injury determination for the cumulated subject imports from Austria, Belgium, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey. *Views* at 100. The Commission issued a negative determination for the subject imports from Brazil, with two members of the Commission dissenting from that decision. *Id.* at 100 & 108.

## CLAIMS AND BASES FOR RELIEF

### COUNT I

18. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 17. The Commission majority's determination not to cumulate the subject imports from Brazil with the subject imports from Austria, Belgium, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey was not supported by substantial evidence and was not otherwise in accordance with law.

19. The U.S. Court of International Trade has stated that, when the Commission bases its "conditions of competition" analysis on the absolute likely volumes of the imports as part of its cumulation analysis, it is engaged in "an impermissible circular {likely injury} analysis" under the statute. *Nucor Corporation v. United States*, 605 F. Supp. 2d 1361, 1370, n. 12 (Ct. Int'l Trade 2009); *Allegheny Ludlum Corporation v. United States*, 475 F. Supp. 2d 1370, 1378-79 (Ct. Int'l Trade 2006); *Neenah Foundry Co. v. United States*, 155 F. Supp. 2d 766, 771-777 (Ct. Int'l Trade 2001).

20. By focusing so heavily on the likely volume of the Brazilian imports in its cumulation analysis in the cut-to-length plate review, the Commission conducted the same "circular" injury analysis that the Court has described as "impermissible" in *Nucor v. United States*, *Allegheny Ludlum v. United States*, and *Neenah Foundry v. United States*.

## COUNT II

21. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 20. The Commission's determination not to cumulate the subject imports from Brazil was not supported by substantial evidence.

22. In its cumulation analysis for Brazil, the Commission majority found that "the record of these reviews does not indicate that the section 232 trade measure as it relates to CTL plate from Brazil, an absolute quota, will likely be terminated or significantly relaxed in in the reasonably foreseeable future." *Views* at 97. They stated that "the quota has been in place" since being imposed in March 2018 and that "there has been no announcement by the current Administration that it is considering revising or removing the quota on CTL plate from Brazil." *Views* at 97. As a result, they concluded that "the Section 232 trade measure, as it is currently structured and enforced, likely will continue into the reasonably foreseeable future." *Views* at 97.

23. These findings are not supported by substantial evidence. Cleveland-Cliffs and the other members of the domestic industry placed on the record undisputed evidence indicating that, in the months leading up to the Commission's determination in the cut-to-length plate review, the President had revised the Section 232 tariffs for the European Union, the United Kingdom, and Japan. Moreover, Cleveland-Cliffs and the other domestic producers also placed

evidence on the record indicating that the government of Brazil was urging the Administration to weaken Section 232 relief with respect to Brazil.

24. Despite the strong evidence submitted by domestic producers on this issue, the Commission concluded that "the Section 232 trade measure, as it is currently structured and enforced, likely will continue through the reasonably foreseeable future." *Views* at 97. Given the undisputed evidence on record to the contrary, the Commission's decision not to cumulate Brazil with the other subject countries was not supported by substantial evidence as a whole.

## COUNT III

25. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 24. The Commission's determination not to cumulate the subject imports from Brazil was not in accordance with law because it was inconsistent with its prior decisions addressing the impact of Section 232 on the volume and pricing of subject imports.

26. Prior to its decision for Brazil in the hot-rolled steel, cold-rolled steel, and cut-to-length plate reviews,[3] the Commission had generally not relied on the Section 232 tariffs, quotas, and tariff rate quotas as a basis for exercising its discretion not to cumulate the subject imports. On the contrary, in cases like *Clad Steel Plate from Japan,*[4] *Non-Oriented Electrical Steel from*

---

[3] In its recent reviews of the antidumping and countervailing duty orders on cold-rolled steel from Brazil, China, India, Japan, South Korea, and the United Kingdom, the Commission also determined not to exercise its discretion to cumulate the subject imports from Brazil with the other subject imports on the grounds that the Brazilian imports would not compete under similar conditions of competition with the other imports. It then issued a negative likely injury determination for Brazil. *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea and the United Kingdom*, Inv. Nos. 701-TA-540543 & 731-TA-1283-1287 & 1290 (Review) (Aug. 2022) at 41-45. The Commission made a similar determinations for Brazil in its reviews of the orders on hot-rolled steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom. *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review) and 731-TA-808 (Fourth Review), USITC Pub. 5380 (November 2022) at 59-62. Cleveland-Cliffs has also appealed these determinations to the Court. *Cleveland-Cliffs Inc. v. United States*, Ct. No. 22-257; *Cleveland-Cliffs Inc. v. United States*, Ct. No. 22-355.
[4] *Clad Steel Plate from Japan, Inv. Nos. 731-TA-739 (Fourth Review)*, USITC Pub. 4851 (Dec. 2018) at 19.

9

*China, Germany, Japan, Korea Sweden, and Taiwan,*[5] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago,*[6] *Tin- and Chromium-Coated Steel Sheet from Japan,*[7] and *Certain Corrosion-Resistant Steel Products from China, India, Italy, South Korea, and Taiwan,*[8] the Commission cumulated the subject imports from all subject countries, even though many were subject to Section 232 tariffs, quotas, and tariff rate quotas.

27.   In its decision for Brazil, the Commission failed to address its departure from this practice, rendering its decision not otherwise in accordance with law.

## COUNT IV

28.   Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 27. As noted above, the Commission's decision not to cumulate the subject imports from Brazil with the other subject imports was not supported by substantial evidence and not otherwise in accordance with law.

29.   As a result, the Commission's negative likely injury determination for Brazil, by itself, was not supported by substantial evidence or otherwise in accordance law.

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

---

[5] *Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan, Inv. Nos. 701-TA-506 and 508 and 731-TA-1238-1243 (Review),* USITC Pub. 5140 (Dec. 2020) at 33 n. 189.
[6] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago, Inv. Nos. 701-TA-417 and 731-TA-953, 957-959, and 961 (Third Review)*, USITC Pub. 5100 (Aug. 2020) at 46 n. 298.
[7] *Tin- and Chromium-Coated Steel Sheet from Japan, Inv. Nos. 731-TA-860 (Third Review)*, USITC Pub. 4795 (June 2018) at 21.
[8] *Certain Corrosion-Resistant Steel Products from China, India, Italy, South Korea and Taiwan*, Inv. Nos. 701-TA-534-537 & 731-TA-1274-1278 (Review), USITC Pub. 5337 (Aug. 2022) at 51 (*CORE Views*).

1) Hold that the Commission's final negative determination for Brazil in *Carbon and Alloy Steel Cut-To-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey*, Inv. Nos. 701-TA-560-561 and 731-TA-1317-1328 (Review), USITC Pub. 5399 (January 2023) was unsupported by substantial evidence and otherwise not in accordance with law; and

2) Remand the Commission's final determination for Brazil in that review to the Commission for disposition consistent with the Court's final opinion in this matter.

Respectfully submitted,

*/s/ Stephen P. Vaughn*
Stephen P. Vaughn, Esq.
Neal J. Reynolds, Esq.
Barbara Medrado, Esq.

**KING & SPALDING LLP**
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
(202) 737-0500

*Counsel for Cleveland-Cliffs Inc*.

Dated: March 31, 2023

**CLEVELAND-CLIFFS INC. v. UNITED STATES**

Court No.: 23-00050

# CERTIFICATION OF SERVICE

  This is to certify that on March 31, 2023, I have caused a copy of the foregoing Complaint to be served upon the following parties via certified mail, return receipt request at the following addresses:

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza
Room 346, Third Floor
New York, NY 10278

Supervising Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

The Honorable Katherine M. Hiner
Acting Secretary
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20024

Claudia Hartleben, Esq.
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037

Chunlian (Lian) Yang, Esq.
Alston & Bird LLP
950 F Street, NW
Washington, DC 20004

David E. Bond, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

J. Kevin Horgan, Esq.
deKieffer & Horgan, PLLC
1090 Vermont Avenue, NW
Suite 410
Washington, DC 20005

Shawn M. Higgins, Esq.
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005

Alan H. Price, Esq.
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036

Jarrod M. Goldfeder, Esq.
Trade Pacific PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003

Daniel L. Porter, Esq.
Curtis, Mallet-Provost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006

Kristen H. Mowry, Esq.  
Mowry & Grimson, PLLC  
5335 Wisconsin Ave., NW  
Suite 810  
Washington, DC 20015  

Jennifer Danner Riccardi  
Delegation of the European Union  
2175 K Street, NW  
Washington, DC 20037  

Roger B. Schagrin, Esq.  
Schagrin Associates  
900 Seventh Street, NW  
Suite 500  
Washington, DC 20001  

Sydney H. Mintzer, Esq.  
Mayer Brown LLP  
1999 K Street, NW  
Washington, DC 20006  

Brady W. Mills, Esq.  
Morris, Manning & Martin LLP  
1401 Eye Street NW  
Suite 600  
Washington, DC 20005  

Aluisio de Lima-Campos  
Embassy of Brazil  
3006 Massachusetts Avenue, NW  
Washington, DC 20008  

Jeffrey M. Winton, Esq.  
Winton & Chapman PLLC  
1900 L Street, NW  
Suite 611  
Washington, DC 20036  

Richard G. King, Esq.  
White & Case LLP  
701 Thirteenth Street, NW  
Washington, DC 20005  

Shinji Suzuki  
JFE Steel Corporation  
2-2-3 Uchisaiwaicho, Chiyoda-ku  
Tokyo 100-0022, Japan  

*/s/ Stephen P. Vaughn*  
Stephen P. Vaughn  
**KING & SPALDING LLP**  
1700 Pennsylvania Avenue, NW  
Washington, DC 20006  
(202) 737-0500